751 So.2d 630 (1999)
Roberto A. GOMEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-2180.
District Court of Appeal of Florida, Third District.
December 15, 1999.
*631 Spencer & Klein, David M. Tarlow and Edelberto Farres, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Consuelo Maingot, Assistant Attorney General, for appellee.
Before NESBITT, JORGENSON, and SHEVIN, JJ.

On Rehearing Granted
NESBITT, J.
Roberto A. Gomez appeals his conviction of attempted second-degree murder based upon numerous improper and prejudicial comments made by the prosecutor during his trial. We agree with Gomez both that the comments were improper and that they constituted fundamental error. Therefore, we vacate Gomez's conviction and remand for a new trial.
Gomez was charged with attempted murder following an altercation with another man which resulted in Gomez's stabbing the man in the back with a knife. Gomez claimed self-defense, asserting that the purported victim had escalated their argument by pulling a knife on Gomez, whereupon Gomez stabbed the victim to avoid being stabbed himself. Gomez testified *632 to this in his own defense at trial. The prosecutor, Laura Stuzin, both on cross-examination of Gomez and during closing argument, made many improper comments which, in our view, were so prejudicial that they deprived Gomez of a fair trial.
Sixteen separate comments were challenged by Gomez. We will discuss the most egregious of them. First, the prosecutor specifically called Gomez, who had testified, a liar, and referred to his version of events as "lies" and as a "cockamamie story." She also said: "The Defendant is a big zero, he has no credibility whatsoever." Next, during her cross-examination of Gomez, the prosecutor inferred, without foundation, that Gomez was a gang leader, that he had "deal[t] with guns often," and that the altercation between Gomez and the victim had sprung from Gomez's attempt to sell the victim a "stolen" watch. Finally, the prosecutor made "golden rule" arguments during closing, improperly suggesting to the jury that if they placed themselves in the shoes of the defendant, they would not have stabbed the victim in reaction to the circumstances the defendant had faced, and suggesting that if this was really a case of self-defense, that the jurors in Gomez's place would have acted differently.
All of the above comments were improper. It is most troubling to this Court that, especially in an instance where the defendant takes the stand in his own defense, the prosecutor here referred to the defendant as a "liar" and to his version of events as "lies." With these types of comments, the prosecutor encroached on the jury's job by improperly weighing in with her own opinion of the credibility of the witnesses. This impropriety was compounded by the prosecutor's other misconductthe "golden rule" arguments and the unfounded questions concerning gang membership and familiarity with guns. As we and other Florida Courts have held in the past, these types of improper comments by "overzealous" (read "unprofessional")[1] prosecutors are unfair to defendants, will not be tolerated, and will continue to result in reversals. See, e.g., Gore v. State, 719 So.2d 1197, 1200-01 (Fla.1998) (prosecutor introduced unsupported collateral crime evidence and repeatedly called the defendant a liar); Izquierdo v. State, 724 So.2d 124 (Fla. 3d DCA 1998) (prosecutor engaged in namecalling of the defendant, referred to the defense as a "pathetic fantasy," and repeatedly used improper golden rule arguments); Pacifico v. State, 642 So.2d 1178 (Fla. 1st DCA 1994) (prosecutor repeatedly called the defendant a chronic liar, introduced facts not in evidence, urged the jury it was their duty to convict, referred to defendant in pejorative terms). We also note that this same prosecutor, Laura Stuzin, was recently admonished for similar improper comments during trial in Walker v. State, 710 So.2d 1029 (Fla. 3d DCA 1998),[2] which resulted in this Court's reversal of that defendant's conviction.
It is not solely the prosecutor who must be admonished here. The trial court retains the ultimate responsibility for the proper conduct of trial counsel and trial proceedings in her courtroom. To quote our Chief Judge Schwartz, speaking in Borden, Inc. v. Young, 479 So.2d 850, 851 (Fla. 3d DCA 1985): "In our view, it is no longerif it ever wasacceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which the parties may fight it out on unseemingly terms of their choosing...." There comes a point and time in the conduct of a trial that the trial judge should and must *633 intervene in the egregious conduct, whether it has been challenged or not. It is the trial judge who is the central figure in the courtroom especially in the eyes of a jury. The jury looks to the trial judge as the only neutral, impartial, detached participant in the trial. Therefore, what the trial judge says and does in the presence of the jury very often gives the jury a better perspective of the case.
The task is not so difficult that trial judges should not be able to understand when they should exercise this authority. As Judge Klein stated in Bellsouth Human Resources Administration, Inc. v. Colatarci, 641 So.2d 427, 430 (Fla. 4th DCA 1994):
It is the trial court's responsibility, when objections are made to improper argument, to sustain the objections and let counsel know that these tactics will not be tolerated. Since the basic parameters of proper argument are the issues reflected in the pleadings; the facts shown by the evidence and the differences to be drawn therefrom; and the instructions given to the jury, with some latitude for rhetoric, it should not be difficult for trial judges to recognize when counsel are exceeding the bounds of propriety.
When objections are sustained and the trial court considers it proper to admonish counsel, it should be done outside the jury's presence. However, if counsel continues to engage in improper comments and arguments, the trial judge should admonish counsel and advise them that future improper tactics will cause counsel to be rebuked before the jury. This has a magical effect! Trial counsel realize that for the impartial judge to rebuke him or her in the jury's presence can seriously undermine their rapport with a jury.
Trial counsel that have been improperly rebuked can and shouldoutside the presence of the juryobject to the improper admonitions and undue incursion into the advocate's role.
For the views expressed above, we reverse the defendant's judgment of conviction and remand for a new trial.
NOTES
[1] As Chief Judge Schwartz recently noted in a similar case, "what is often euphemistically called `overzealous advocacy' ... is really just unprofessional and unethical behavior." Izquierdo v. State, 724 So.2d 124, 126 n. 1 (Fla. 3d DCA 1998).
[2] In Walker, Ms. Stuzin described the defendant as "repulsive" and argued that he had "the face of a liar" and also referred to the defendant in other pejorative terms.