ORFINGER, C.J.
Richard L. Johnson appeals his conviction and sentence for aggravated assault on a law enforcement officer. Johnson argues that the court fundamentally erred by departing from its role of neutrality during the trial, and that the State’s closing argument was improper. While we find no error in the State’s closing argument, we agree that Johnson is entitled to a new trial based on the trial judge’s comments during the trial.
Deputy Mitchell Tucker was dispatched to an “open-line” 911 call, which came from an apartment complex. While no one spoke on the other end, the dispatcher could hear screaming in the background. As Deputy Tucker entered the apartment complex, he saw Johnson’s car pulling out of a parking space. Deputy Tucker flashed the high-beam lights on his marked patrol vehicle, signaling Johnson to stop his car. After Johnson stopped, Deputy Tucker left his patrol car and walked to a position about six feet in front of Johnson’s car. Deputy Tucker could see a man, later identified as Johnson, facing him in the driver’s seat. Suddenly, Johnson accelerated the car toward Deputy Tucker, who jumped out of the way in order to avoid being hit. Johnson sped away, missed a turn and crashed into a fence in a nearby wooded area. He then abandoned his car and ran into the woods where he was apprehended a short time later. Following a jury trial, Johnson was charged with and convicted of aggravated assault on a law enforcement officer. This appeal followed.
Johnson argues that the court’s actions during trial constitute fundamental error. Specifically, Johnson claims that in the jury’s presence, the trial court extensively questioned the State’s key witness, Deputy Tucker, commented on Deputy Tucker’s answers, and suggested answers that Deputy Tucker then adopted. The State does not defend the trial judge’s actions, but argues that Johnson has not shown that the trial court’s unobjected-to conduct rose to the level of fundamental error.
Trial judges must be fair, impartial, and disinterested participants in the proceedings. Vaughn v. Progressive Cas. Ins. Co., 907 So.2d 1248, 1253 (Fla. 5th DCA 2005). In order to preserve impro *1014 prieties of a trial judge for appellate review, an objection must be made contemporaneously with the prejudicial conduct or comments. Herzog v. State, 439 So.2d 1372, 1376 (Fla.1983); Mathew v. State, 837 So.2d 1167, 1170 (Fla. 4th DCA 2003); Jones v. State, 582 So.2d 110, 111 (Fla. 3d DCA 1991); Williams v. State, 305 So.2d 45 (Fla. 1st DCA 1974). Johnson acknowledges that he made no contemporaneous objections to the trial court’s alleged misconduct to preserve the issue for appellate review, but claims that the court’s actions constituted fundamental error.
“Fundamental error” has been defined “as error that ‘reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Rimmer v. State, 825 So.2d 304, 323 (Fla.2002) (quoting Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)). For an error to be fundamental, it must be basic to the judicial decision under review and equivalent to a denial of due process. Randall v. State, 760 So.2d 892, 901 (Fla.2000). Thus, not every act or comment with potential to be interpreted as demonstrating less than total neutrality on the part of the trial judge, will be deemed fundamental error. Mathew, 837 So.2d at 1170.
In the case before us, the State’s evidence against Johnson consisted primarily of testimony from the officer-victim, Deputy Tucker. At one point during the trial, as the defense attempted to show that recordings of the alleged assault could have been introduced, the judge intervened and helped establish that Deputy Tucker never puts radio transmissions into evidence:
[THE STATE]: Do you routinely get the recordings from every time that you talk on the walkie-talkie during a criminal investigation?
[DEFENSE]: I’m going to object, Your Honor. Not relevant in other cases.
THE COURT: Well, that’s not really relevant, what he does in other cases.
[[Image here]]
... You know, /all are going kind of far afield, it seems to me like. They didn’t file the transmissions in evidence. They don’t have them.
[THE STATE]: Well, my question to you is, do you routinely file your [radio] transmissions into evidence?
[DEFENSE]: I’m going to object, Your Honor, it’s not relevant.
THE COURT: Well, have you ever filed your recordings in evidence?
[DEPUTY]: Never.
THE COURT: Okay, so you don’t routinely do it, then, right?
[DEPUTY]: No, Sir.
THE COURT: Never been done.
In addition, the court interrupted the State’s redirect examination of Deputy Tucker, suggesting answers that Deputy Tucker adopted:
[THE STATE]: And the call, there was a dispute over domestic versus open line versus whatever was going on. When you responded to that call for service, was there any indication that there was any personal grave danger?
[DEPUTY]: No.
[DEFENSE]: I’m going to object, Your Honor. Calls for speculation.
[[Image here]]
THE COURT: Well, he didn’t know what — he was just going — he didn’t know what he was getting into. At least I thought that’s what he said, because it was an open line call.
[THE STATE]: Right. And on cross-examination, the question was: So you didn’t know if somebody was dying? *1015 You didn’t know if there was somebody that needed your help?
THE COURT: He didn’t know.
[THE STATE]: Right.
THE COURT: You didn’t know what kind of call it was, did you?
[THE STATE]: So he did not know.
THE COURT: You were going over there to check because there was an open-line call.
[DEPUTY]: Yes, sir.
[THE STATE]: Yes.
THE COURT: That’s all he knew.
[[Image here]]
BY [THE STATE]:
Q. Sir, my question to you is obviously, there’s a big issue here. Why did you decide to try to stop that vehicle that was leaving that parking lot when you were responding to an open-line call? You had no idea what was going on.
[[Image here]]
[DEPUTY]: It’s midnight. There’s one vehicle leaving in the whole thing. To my knowledge, a crime might have occurred.
[DEFENSE]: Objection, Your Honor.
[THE STATE]: I asked him why he stopped the vehicle.
THE COURT: Well—
[THE STATE]: He’s answering it.
THE COURT: He did — well, how come you didn’t go to the apartment where the call came from first?
[DEPUTY]: Because there’s only one vehicle leaving. I have cars coming from behind — or I have other deputies responding. If he did commit a crime, I’m not going to let him pass and get away and then go up and then see—
THE COURT: Well, I mean, there could have been some other emergency unrelated to that call passing, driving in or out of the parking lot.
[DEPUTY]: Yes, sir, there could be.
[THE STATE]: Right. And Judge, my question to him is—
THE COURT: So it was just your call, you decided to stop the vehicle?
[DEPUTY]: Yes, sir.
THE COURT: Okay.
[THE STATE]: Okay. And Judge, you’re asking questions in the middle of my questions.
THE COURT: Yeah, I can do that.
[THE STATE]: And so — I understand. I just want to make sure they weren’t stepping on each other.
By [THE STATE]:
Q. And so the question was: When you stopped the vehicle, your training and experience, why are you choosing to stop this vehicle instead of running to Apartment 5B?
THE COURT: No, he just said — look, it was a judgment call. He could have gone to the apartment. He saw a vehicle leaving, he didn’t know who was in the vehicle so he stopped the vehicle because otherwise, [a crime victim] might come back at some time and say well, how come, you know, the robber’s driving off, how come you didn’t stop him? You drove right into the parking lot, you came to my apartment, and you know, hey, the robber just got away.
[DEPUTY]: Exactly.
THE COURT: It was a call that he made, based on his experience: Isn’t that right?
[DEPUTY]: Yes, sir.
By [THE STATE]:
Q. So did you believe that behavior to be suspicious?
[DEFENSE]: I’m going to object, Your Honor. That calls for speculation.
*1016 THE COURT: I don’t think he said it was suspicious. He just says he made that call to stop that vehicle because he was going to respond to an open-line call and the only activity he saw was the vehicle leaving the parking area.
[THE STATE]: What’s happening is there’s a gap there that I’m trying to close, Your Honor. I’m trying to close the gap of why is he stopping the vehicle and you’re saying it’s his call. Okay, why is it his call? Why is he making the decision to stop the vehicle?
THE COURT: Look, it’s based on his experiences. That’s why he—
[THE STATE]: So based on your experience, what did you believe, based on your training and experience?
THE COURT: No, wait. What he believed — look, he stopped the vehicle.
[THE STATE]: Yes, sir.
THE COURT: Why don’t we go on from there? Why do we need to speculate on why he didn’t turn go to the ... why he didn’t turn on his — why didn’t he turn on his emergency lights when he was traveling there.... He didn’t — sorry. He didn’t do that. It was his call.
[THE STATE]: I’m responding to the cross-examination, Sir.
THE COURT: I understand, but we need to wrap this up, I mean, we’ve been going over it a dozen times.... He stopped the vehicle, it was leaving the parking lot, and that was his judgment call at that time.... And yes, we can always second guess and third guess people but this is what his call was at that time based on his experiences.
Later, when the State sought to introduce cocaine into evidence (Johnson was acquitted of this charge), Johnson’s counsel asked to voir dire Deputy Tucker as to chain of custody. In response, the court admonished both sides in the jury’s presence, as follows:
THE COURT: ... People, you know, we’re not going to take two days to try this case.... I think y’all are making a mountain out of a molehill. Call your next witness. I thought we could speed things up but apparently we can’t.
[DEFENSE]: I’m trying to, Your Honor. I just need to do the cross of him of this particular issue.
THE COURT: Well, look, I said we’re not going to go into it right now. I thought we could speed things up, but fine. Call your next witness and y’all can take this up later....
[THE STATE]: Okay.
THE COURT: I mean, it’s kind of aggravating but that’s the way you want to do it.
[THE STATE]: Actually, Judge, it would be more — this—it could be done — well, it would be more expedient to finish with [this witness] here, sir.
THE COURT: No. She might-look, that may take an hour for y’all to get through the cross—
[DEFENSE]: No, it’s not, Your Hon- or. It’s only a few questions.
[THE STATE]: No. No, we’re not, sir.
THE COURT: Look, we’re going to do it my way.
[DEFENSE]: Yes, sir.
THE COURT: Call your next witness. We’re not going to do it, people. I’m in charge here. We’re going to do it this way. We’re taking entirely too much time on some of these collateral matters. Step down. Call the other officer.
 A trial court should scrupulously avoid commenting on the evidence in a case. Whitfield v. State, 452 So.2d 548, 549 (Fla.1984). While a judge may take the initiative to clear up uncertainties in *1017 the issues of a case, the law is clear, especially in a criminal prosecution, that the trial court should take great care not to intimate to the jury the court’s opinion as to the weight, character, or credibility of any evidence adduced. Id. This principle is codified in section 90.106, Florida Statutes (2011), which provides that “[a] judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused.” The basis for this provision emanates from Hamilton v. State, 109 So.2d 422, 424-25 (Fla. 3d DCA 1959), which explained:
The dominant position occupied by a judge in the trial of a cause before a jury is such that his remarks or comments, especially as they relate to the proceedings before him, overshadow those of the litigants, witnesses and other court officers. Where such comment expresses or tends to express the judge’s view as to the weight of the evidence, the credibility of a witness, or the guilt of an accused, it thereby destroys the impartiality of the trial to which the litigant or accused is entitled.
The requirement of judicial impartiality is at the core of our system of criminal justice. Williams v. State, 901 So.2d 357, 359 (Fla. 2d DCA 2005). “The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosee[u]tion or defense lest it appear that his neutrality is departing from center.” Williams v. State, 143 So.2d 484, 488 (Fla.1962). However, “[ejxtensive participation of the trial judge, such as by excessive questioning of witnesses, may amount to usurping the functions of counsel and be an abuse of the discretion and latitude of the court in such respects, with resultant injury to the rights of a party or parties.” Bumby & Stimpson, Inc. v. Peninsula Utils. Corp., 169 So.2d 499, 501 (Fla. 3d DCA 1964). “The very status of the judge as interrogator inevitably means that the answers given by the witness will assume an importance in the mind of jurors otherwise lacking if counsel had instead asked the questions.” Moton v. State, 659 So.2d 1269, 1270 (Fla. 4th DCA 1995). A trial judge who assumes the role of a prosecutor deprives the defendant of due process and commits fundamental error that may be raised for the first time on appeal. Padalla v. State, 895 So.2d 1251, 1252 (Fla. 2d DCA 2005); Sparks v. State, 740 So.2d 33, 36 (Fla. 1st DCA 1999).
The record before us reveals that the trial judge actively participated in examining the State’s primary witness on substantive issues. In ruling on objections, the court commented, in front of the jury, on what the evidence had shown, and at times, suggested testimony to the witness, which the witness then adopted. On several occasions, the trial court offered objections to questions when none had been stated by opposing counsel, and excessively criticized counsel for making arguments that it believed were not relevant.[1]
“A fundamental error is one that undermines the confidence in the trial outcome and goes to the very foundation of a case. Often, it is the equivalent of a denial of due process.” Jassan v. State, 749 So.2d 511, 512 (Fla. 2d DCA 1999). We conclude that the trial court’s conduct vitiated the validity of the proceedings, which requires a new trial before a different *1018 judge. See Gonzalez v. Mercy Hosp., Inc., 738 So.2d 955 (Fla. 3d DCA 1999) (holding that trial court’s comments on evidence and participation in cross-examination of witnesses to be reversible error); Vaughn, 907 So.2d at 1252 (reversing and remanding for new trial with new judge after judge improperly rebuked counsel and im-permissibly commented on evidence); Carr v. Crosby Builders Supply Co., 283 So.2d 60 (Fla. 4th DCA 1973) (reversing wrongful death action where judge’s comment gave jury impression that opposing party did not act negligently); see also Sparks, 740 So.2d 33 (holding that state could not show harmlessness where judge pointed out inculpatory evidence in court file to prosecutor, which denied defendant’s right to due process of law and trial by neutral and detached magistrate).
REVERSED and REMANDED FOR A NEW TRIAL.
LAWSON and JACOBUS, JJ., concur.

. It is possible that when counsel stood to make an objection, the court anticipated the objection before it could be stated. From an appellate standpoint, the transcript reflects rulings on objections when counsel voiced no objection.