FARMER, Judge.
Newry was held in direct criminal contempt and sentenced to five months in the county jail for perjury committed during a hearing on whether she had violated her probation. Four days after sentencing, the state charged her by information with committing the same perjury. She moved to dismiss the information on the grounds that it was barred by the double jeopardy clause, because she was found in contempt and jailed for the same act. The trial judge denied her motion; she pleaded no contest and reserved the issue; she now appeals from the final judgment convicting her of the charge and placing her on probation. We reverse.
The contempt proceeding was not summary. At the first hearing, she denied that she had ever used any other name and stated specifically that she was not the Jacqueline Newry who had been placed on probation by another judge in a separate proceeding. On the next day she was placed under oath and again denied that she was Jacqueline. She was fingerprinted at that hearing, which was then recessed so that an expert could compare the prints.
Two days later, another hearing was held, at which the state proffered expert testimony that the two Newry’s were the same person. The trial judge told her that if the proffer turned out to be correct after an evidentiary *1293 hearing, he would hold her in contempt for perjury on the two previous occasions. He also announced that he would hold a consolidated hearing on the two alleged contempts, unless she and the state could work out a plea. They did and she was punished as described.
Whether double jeopardy bars the information turns on whether the contempt proceeding was summary. The state argues that her contempt was direct because it was committed in the presence of the court and that she was thus summarily punished. We think the state has misconstrued the proceedings. The contempt may have been committed in the presence of the judge— after all, she did lie to him — but that hardly means that the ensuing contempt proceeding was necessarily summary. In fact, the state’s brief itself betrays the nonsummary nature of this proceeding by its use of the following quotation:
“We think ‘summary’ as used in [Rule 42(a) ] does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial. The purpose of that procedure is to inform the court of events not within its own knowledge. The rule allows summary procedure only as to offenses within the knowledge of the judge because the occurred in his presence.”
See Sacher v. United States, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952). The record indisputably shows that the court did not know whether she was the Jacqueline Newry who had been convicted previously. Two hearings were required to settle that issue, so that the court could inform itself of facts not within its own knowledge.
It would be a rare occasion when a trial judge could summarily punish contempt committed by perjury. As then-judge An-stead wrote in Emanuel v. State, 601 So.2d 1273 (Fla. 4th DCA 1992):
“Under [State v.] Coleman, [138 Fla. 555, 189 So. 713 (1939)] the court should not ‘weigh the conflicting evidence’ to de-^ermine if a witness is being truthful. In other words, the mere fact that the court believes one witness over another is insufficient to establish judicial knowledge that a witness’ testimony is false for the purpose of summarily adjudicating the witness in direct criminal contempt. To hold otherwise would create a chilling effect on a party’s exercise of his constitutional right to freedom of speech, access to the courts, and due process, [c.o.] Direct criminal contempt is a criminal sanction that may result in serious consequences, including immediate imprisonment.
Ordinarily, under our constitutionally mandated system of due process, criminal sanctions cannot be imposed unless the full panoply of due process rights are applied. That is why, in the ordinary situation where perjury is suspected, a state prosecution for perjury is the preferred alternative.”
601 So.2d at 1275. We believe that here the judge avoided a summary proceeding to punish the perjury when first committed for the very reasons articulated by Judge Anstead. His nonsummary treatment in this case means that the state could not bring the separate statutory perjury prosecution after it had already assisted in the prosecution of the same act as contempt.
REVERSED.
GLICKSTEIN and STONE, JJ., concur.