740 So.2d 33 (1999)
Jimmy SPARKS, Appellant,
v.
STATE of Florida, Appellee.
No. 97-4113.
District Court of Appeal of Florida, First District.
March 30, 1999.
Rehearing Denied April 29, 1999.
Nancy A. Daniels, Public Defender; Phil Patterson, Assistant Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General; Denise O. Simpson, Assistant Attorney General, Tallahassee, for appellee.
WOLF, J.
James Earl Sparks challenges his conviction for purchasing cocaine. He asserts that he was denied his right to due process of law and trial by a neutral and detached magistrate when the trial judge pointed out to the prosecutor evidence which was used as impeachment and which was relied on by the prosecutor in closing argument. The state asserts that the defense waived this argument by failing to raise the issue in the trial court and that any error was harmless. We find that the conduct of the trial judge constituted fundamental error and cannot be considered harmless under *34 the facts of this case. We, therefore, reverse and remand for a new trial.
Sparks was charged after he purchased cocaine from an undercover police officer conducting a reverse sting operation in Panama City Beach in April 1997. Sparks and his codefendant were seated in a vehicle when they were approached by an undercover police officer. The undercover officer testified that Sparks had asked for a "40," which means two rocks of cocaine, and the officer had asked to see Sparks' money. At that point, the undercover officer testified that the codefendant asked to taste the drugs, Sparks handed the money to the codefendant, and the codefendant handed the money to the officer. Although only $35 changed hands, the officer testified that he told Sparks and his codefendant to take the drugs and go. The undercover officer testified that he let the two men have the drugs even though they had been $5 short because when they had been advised of the insufficient amount of money, the codefendant began reaching into his pocket as if for a weapon.
The undercover officer testified that when he returned to his unmarked vehicle, he notified the take-down team to make the arrest. However, when Sparks was apprehended and searched, no cocaine was found either in the vehicle or on either occupant. The officers involved in the arrest testified that they had not seen anything thrown from the vehicle, but that something could have been thrown from the vehicle which escaped their notice or that either Sparks or the codefendant could have swallowed the cocaine.
Sparks' case consisted of testimony from himself and his codefendant. Both asserted that Sparks had not purchased anything from the man who had approached the car.
Sparks began his testimony by stating that he had worked for the Panama City Beach waste water treatment plant for seven years where he had been regularly screened for drug usage and had never had a positive result. During cross-examination, Sparks admitted that he had told the police immediately after his arrest that he was a self-employed plumber, but he explained that he had done so because he had feared being fired if his real employer had found out about the arrest. After extensive cross-examination of Sparks, the prosecutor announced that he did not "have anything else."
While Sparks was still on the witness stand, the trial court asked counsel to approach the bench. Sparks asked if he could step down, but the trial court told him: "No, sir, just a second please." The trial court then conducted an unrecorded bench conference. The parties have filed a stipulation in this court regarding what occurred during this unrecorded bench conference:
At an unrecorded bench sidebar during the testimony of the Defendant, the Court pointed out to both trial counsel that the Defendant had completed an Affidavit of Insolvency with certain information that might have been contrary to his trial testimony. No other representations, suggestions, inquiry, or statements were made.
Following the unrecorded bench conference, the prosecutor resumed his cross-examination of Sparks by attempting to impeach Sparks as follows with a document represented to be an affidavit of insolvency executed by Sparks in conjunction with this case:
PROSECUTOR: Mr. Sparks, let me show you a document. Is that your signature appears on the reverse?
DEFENDANT: Yes, sir.
Q: What did you indicate that your employment was on that document?
A: It says plumber.
Q: Your employment says what?
A: Self. That ain't my handwriting there.
Q: You signed swearing all that stuff was true; didn't you?
A: Yes, sir, that's my signature there.

*35 Q: It says subscribed and sworn before me?
A: Yes, sir.
Q: So again under oath you said?
DEFENSE COUNSEL: I'm going to have to object, Your Honor.
TRIAL COURT: Overruled.
PROSECUTOR: That you're self employed?
A: That's not my handwriting.
Q: Did you sign it as being true, Mr. Sparks?
A: I signed a piece of paper but I didn't write the stuff down.
Q: You asked for the appointment of a public defender and said that the following statements regarding his or her marital status, residence, employment and financial status are true and correct?
A: They never read me my rights so I don't know what I signed, they just told me to sign something.
Q: Police didn't give you that, that was the next day at the bond hearing; wasn't it?
A: I'm not really for sure, I can't recall.
Following this question, the prosecutor asked that the document used, which was identified as an affidavit of insolvency executed by Sparks in conjunction with this case, be marked and entered into evidence. Defense counsel then conducted some redirect of Sparks on the circumstances surrounding the execution of the affidavit of insolvency. After the prosecutor conducted some limited recross-examination of Sparks, the trial court asked if there was any objection to the introduction of the affidavit. Defense counsel responded, "Just my previous objection." Although the record on appeal indicates that the affidavit of insolvency was admitted into evidence, that document does not appear anywhere in the record. Only Sparks' revised affidavit of insolvency stating that he worked for the Panama City Beach Waste Water Department appears in the record on appeal.
The prosecutor opened his closing argument by stating: "This is a case of credibility, quite frankly." He then argued that despite the lack of any physical evidence in the form of cocaine recovered from the vehicle, he had proven his case against Sparks through the credible testimony of law enforcement officers and encouraged the jury to disregard Sparks' testimony based on the theory that if Sparks would lie to protect his job, lying both to the police and on his affidavit of insolvency, he would lie to "save his skin."
In addressing Sparks' argument, we must first determine whether partiality of the trial judge constitutes fundamental error which can be raised for the first time on appeal. Fundamental error has been defined as error that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process. See Kilgore v. State, 688 So.2d 895, 898 (Fla.1996). The Florida Supreme Court has held that a trial before a judge whose impartiality may reasonably be questioned "would present grave due process concerns" because "proceedings involving criminal charges ... must both be and appear to be fundamentally fair." See Steinhorst v. State, 636 So.2d 498, 500-01 (Fla.1994).[1]
*36 In Love v. State, 569 So.2d 807 (Fla. 1st DCA 1990), this court recognized that the issue of alleged judicial prejudice is extremely serious:
Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of courts to scrupulously guard this right of the litigant and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice.
A judge must not only be impartial, he must leave the impression of impartiality upon all those who attend court. The attitude of the judge and the atmosphere of the courtroom should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance.... [A] fair and impartial trial can mean nothing less than this.
Id. at 809-10 (internal citations omitted). In Porter v. Singletary, 49 F.3d 1483, 1487-88 (11th Cir.1995), the Eleventh Circuit Court of Appeals stated,
The law is well-established that a fundamental tenet of due process is a fair and impartial tribunal. Marshall v. Jerrico, Inc., 446 U.S. 238[, 100 S.Ct. 1610, 64 L.Ed.2d 182] (1980). There the Supreme Court said:
The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.... The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law.... At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," ... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.
(Citations omitted, emphasis in original.) We determine that the issue raised by Sparks constitutes fundamental error which may be raised for the first time on appeal.
We must next address whether the conduct of the trial court, in pointing out evidence that the prosecutor could use for impeachment, actually crossed the line from neutral arbiter to advocate resulting in a denial of Sparks' right to due process of law and trial by a neutral and detached magistrate. The fourth district was faced with somewhat similar circumstances in the case of J.F. v. State, 718 So.2d 251 (Fla. 4th DCA 1998). In that case, the judge directed a witness for the state to obtain additional evidence, and Judge Warner properly noted,
While is it permissible for a trial judge to ask questions deemed necessary to clear up uncertainties as to issues in cases that appear to require it, the trial court departs from a position of neutrality, which is necessary to the proper functioning of the judicial system, when it sua sponte orders the production of evidence that the state itself never sought to offer into evidence.
*37 Id. at 252 (internal citation omitted). In Chastine v. Broome, 629 So.2d 293 (Fla. 4th DCA 1993), the fourth district also held that a trial court judge had demonstrated a lack of impartiality by cautioning the prosecutor against further cross-examination of a defense witness. There, the trial judge that passed a note to the prosecutor giving the attorney the strategic tip about cross-examination. See id. at 294. The fourth district concluded that "when a judge becomes a participant, a shadow is cast upon judicial neutrality...." Id. at 295. A judge's neutrality is that much more impaired when he or she actively seeks out the presentation of additional evidence in a case.
"A trial judge should never assume the role of prosecuting attorney and lend the weight of his great influence to the side of the government." J.F., supra (quoting Hunter v. United States, 62 F.2d 217, 220 (5th Cir.1932)). This is because,
In our system of administering justice the functions of the trial judge and the prosecuting attorney are separate and distinct; they must not be confused. The trial judge has a duty to conduct the trial carefully, patiently and impartially. He must be above even the appearance of being partial to the prosecution.
Id. (citations omitted). We find that the trial judge in this case assumed the role of prosecutor. Such conduct constitutes error.[2]
We cannot accept the state's argument that the error in this case is harmless. While in Love we recognized that in certain limited circumstances the appearance of a lack of impartiality on the part of the trial judge may constitute harmless error, the facts in this case differ substantially from the facts in Love. See Love, supra (where act of alleged impartiality consisted of trial judge conferring ex parte with an assistant attorney general concerning an evidentiary ruling). In this case, the trial court judge crossed the line from neutral magistrate to advocate by directing the prosecutor's attention to evidence on the core issue of the credibility of the defendant. The jury witnessed the prosecutor indicating that he had no further questions for the defendant, the judge calling the attorneys to the bench, and the prosecutor questioning the defendant concerning the affidavit of insolvency immediately after the bench conference. The prosecutor also utilized this evidence in closing argument. The jury could have reasonably inferred that the prosecutor's new information used during the resumed questioning of the defendant had been obtained from the judge. Under these circumstances, it is impossible to say that the error which occurred is harmless. We, therefore, reverse.
MINER, J., concurs.
PADOVANO, J., dissenting with written opinion.
PADOVANO, J., dissenting.
I do not think the trial judge committed an error, much less a fundamental error, by calling the attorneys to the bench and informing them of the affidavit in the court file. Therefore, I respectfully dissent.
The main premise of the majority opinion is that a trial judge must not assume the role of an advocate. That is no doubt correct. In J.F. v. State, 718 So.2d 251 (Fla. 4th DCA 1998), the appellate court reversed a juvenile adjudication because the trial judge had directed a police officer to obtain a fingerprint comparison and to report back to court with the comparison. The court addressed the same issue in Chastine v. Broome, 629 So.2d 293 (Fla. 4th DCA 1993), although in a different context. There, the court ordered the disqualification of a trial judge who had privately passed a note to the prosecuting *38 attorney advising him not to cross examine a sympathetic witness. As these opinions illustrate, the trial judge must not advocate a particular outcome by helping one side present the case.
This principle is stated correctly in the majority opinion but, in my view, it is not applied correctly to the facts. In the present case, the trial judge privately informed the lawyers of an affidavit in the court file. This was not advocacy. The affidavit contained sworn facts directly refuting the defendant's trial testimony, but the trial judge did not question the defendant or confront him with the affidavit. Nor did she suggest that the lawyers should question the defendant about the affidavit. The trial judge did bring the statement to the attention of counsel, but I would not classify that action as a form of advocacy.
The role of a trial judge is not entirely passive. To the contrary, a trial judge may be required to take the initiative in some circumstances, to ensure that justice is done. For example, a trial judge may call a witness or question a witness called by a party, when the interest of justice requires that course of action. See § 90.615, Fla. Stat. (1997). Likewise, the trial judge has a duty to correct a fundamental error at trial even in the absence of an objection. Appellate courts regularly reverse trial judges when they do not take the initiative to correct fundamental mistakes during a trial.
If a witness commits perjury in the courtroom, the trial court has authority to hold the witness in direct criminal contempt. See Newry v. State, 654 So.2d 1292 (Fla. 4th DCA 1995); Emanuel v. State, 601 So.2d 1273 (Fla. 4th DCA 1992). The power to hold a witness in contempt for perjury is limited, but it would be proper to exercise that power in a case such as this one where the witness has signed an affidavit that is diametrically opposed to his trial testimony. See Roberts v. State, 515 So.2d 434 (Fla. 5th DCA 1987). Here, the trial judge took a much less drastic step.
Whether a judge may properly inform the lawyers of perjury in a situation such as this is an issue upon which experienced trial judges might disagree. Some might argue that it is better to remain silent to avoid the appearance of partiality, while others might argue that it is better to inform the lawyers of the perjury to avoid a miscarriage of justice. Ultimately, the decision is one that calls for the exercise of judgment. Based on the facts of this case, I do not think we can say that the judge exercised that judgment improperly.
For these reasons, I would affirm.
NOTES
[1] We would note that in Steinhorst v. State, 695 So.2d 1245, 1247 (Fla.1997) (Steinhorst II), the supreme court held that Steinhorst had waived the issue of the prejudice of the judge who had ruled on his first rule 3.850 motion by not raising it prior to the evidentiary hearing on his first rule 3.850 motion because he could have reasonably discovered the facts supporting the issue before the first rule 3.850 motion was ruled on. We do not believe such a waiver argument is applicable in this case because the facts upon which Sparks' partiality issue are based did not become known to Sparks until the middle of his trial, giving him no opportunity to file a pretrial motion for recusal. In Steinhorst II, the trial court judge's alleged prejudice could have been learned prior to any action being taken on Steinhorst's first rule 3.850 motion and subsequent motions for postconviction relief are disfavored. We feel, therefore, that the difference in procedural postures between Steinhorst II and this case makes the waiver argument inapplicable here.
[2] Nothing herein shall be construed as a limitation on the court's ability to institute contempt proceedings or to refer a potential perjury charge to the state attorney's office based upon untruthful testimony given under oath in the presence of the court.