# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Nos. 1D15-5339
1D15-5340
(Consolidated for disposition)

_____

WILLIAM LEE,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Russell Healey, Judge.

December 27, 2018

KELSEY, J.

We affirm William Lee's convictions and sentences for two counts of attempted first-degree murder, one count of shooting or throwing deadly missiles, and tampering with evidence. We write only to address the unpreserved argument that the trial judge departed from the role of a neutral arbiter and thereby vitiated the fairness of the trial.

## Judges' Involvement At Trial

It has long been the law that "Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge." *State ex rel. Mickle v. Rowe*, 131 So. 331, 332 (Fla. 1930) (holding judge should have granted motion

to disqualify him in a case involving a bank in which he had deposited 5 or 6 dollars before the bank closed). In the specific context of conducting court proceedings, judges have the statutory obligation to control the admission of evidence. § 90.104(2), Fla. Stat. (2015) (requiring judges to "conduct proceedings, to the maximum extent practicable, in such a manner as to prevent inadmissible evidence from being suggested to the jury by any means."). A judge may question witnesses to clarify issues, as long as the questions do not demonstrate a departure from the judge's neutral position. *Williams v. State*, 143 So. 2d 484, 488 (Fla. 1962); *see* § 90.106, Fla. Stat. (2015) ("A judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused.").

Judges are warned to "be cautious in cutting off counsel's questions and interjecting [their] own questions to a witness." *Grant v. State*, 764 So. 2d 804, 806 (Fla. 2d DCA 2000). A judge should not only be impartial, but should "leave the impression of impartiality on all those who attend court." *Sparks v. State*, 740 So. 2d 33, 35–36 (Fla. 1st DCA 1999). A judge who assumes the role of prosecutor deprives the defendant of a fair and impartial tribunal, which, as a deprivation of due process, constitutes fundamental error. *Cagle v. State*, 821 So. 2d 443, 444 (Fla. 2d DCA 2002).

However, "it is clear that not every act or comment that might be interpreted as demonstrating less than neutrality on the part of the judge will be deemed fundamental error." *Mathew v. State*, 837 So. 2d 1167, 1170 (Fla. 4th DCA 2003); *see also Jones v. State*, 385 So. 2d 132, 134 (Fla. 4th DCA 1980) ("Initially, we point out there are occasions where there is no error in rebuking defense counsel in the presence of the jury.").

### Facts Of This Case

The State theorized that this shooting involved a love triangle gone awry. Lee shot into an SUV driven by another man, and in which rode Lee's own sometime girlfriend. During the trial, the judge made several comments about defense counsel's questions and the prosecutor's failure to object to them. The judge also asked several questions of one of the State's witnesses, a detective, when

2

the witness remained confused about defense counsel's questions despite several attempts at reframing them.

First, defense counsel asked the girlfriend if the driver was upset that she preferred to be with Lee because Lee could better provide for her. The judge called a sidebar and told defense counsel that even though the State was not objecting, he was not going to allow counsel to continue asking the witness what was in the driver's mind.

Next, defense counsel asked the driver if he told the girlfriend the two of them were done because she had at one point chosen Lee, and the court called another sidebar. The judge told the prosecutor he was sitting like a "bump on a log" while defense counsel was asking irrelevant questions about a relationship between the two victims. The judge told defense counsel that she had elicited "a gracious plenty" about the victims' relationship, so she could ask a couple more questions, then move on.

Defense counsel also asked the driver several questions about his driving the SUV away from the shooting that night and totaling it two days later. The State objected when defense counsel then asked the driver to confirm that he did not make an insurance claim after he totaled the vehicle. This time the judge called a sidebar and more sternly chastised defense counsel for asking "completely immaterial" questions. He also shamed the State for "sitting on your ass yet again" and letting defense counsel do whatever she wanted. At the conclusion of the sidebar, defense counsel moved on to asking the driver about the shooting itself.

Later, defense counsel was questioning the detective about a surveillance video he copied from the apartment complex's surveillance system. Specifically, counsel questioned the detective about when he realized the copy was not timestamped, but he was confused by the questions, so the State objected to the form of the question. After defense counsel made a few attempts to clarify the questions without success, the judge "chime[d] in" to ask some questions of his own. He had the witness clarify the timeline of when he discovered and then copied the footage. Finally, he asked the detective when he realized the copy did not have a running time stamp on it.

3

## Analysis

Lee argues that the judge's actions constituted fundamental error because they gave the impression that the judge was not acting as an impartial arbiter. *See Sparks*, 740 So. 2d at 35–36. We disagree. Our review of the record leads us to conclude that the trial judge did not violate the governing legal principles. Rather, he assisted *both sides* in clarifying issues and excluding inadmissible evidence. Further, and significantly, Lee has failed to demonstrate fundamental error.

These facts are unlike those in other cases holding that trial courts acted improperly. In *Cagle*, the court reversed a revocation order where the trial court essentially took over the prosecutor's job of calling and questioning witnesses. 821 So. 2d at 444; *see also Lang v. State*, 228 So. 3d 153, 155 (Fla. 4th DCA 2017) (reversing a revocation order where the judge gathered his own evidence and used it to make crucial credibility determinations). In *Evans v. State*, 831 So. 2d 808, 811 (Fla. 4th DCA 2002), the court reversed a defendant's conviction where the trial judge suggested to the State that it should inquire into the immigration status of a witness after that witness declared she was a law-abiding citizen. Similarly, in *Lee v. State*, 789 So. 2d 1105, 1107 (Fla. 4th DCA 2001), the court reversed a conviction where the judge prompted the State to have the witness identify a scar on the defendant's arm for the jury. Lastly, in *Sparks*, this Court reversed a conviction where the judge pointed the prosecutor to evidence he could use to question the credibility of the defendant after the prosecutor had concluded his questioning of the defendant. 740 So. 2d at 37. We held that the trial judge fundamentally erred when he assumed the role of prosecutor. *Id.* at 36–37.

Here, the judge demonstrated growing frustration with defense counsel's questioning of witnesses, and was equally frustrated with the prosecutor's failure to object to inadmissible evidence. However, unlike *Cagle*, *Evans*, *Lee*, *Lang*, and *Sparks*, the judge here did not take over prosecuting the State's case, nor did he prompt the prosecutor to enter evidence or cross-examine a witness with certain questions. He instead chastised both attorneys for allowing the jury to hear inadmissible evidence. The

4

judge had a duty to keep the jury from hearing this inadmissible evidence, and his actions were directed at carrying out that duty. Carrying out that judicial duty inherently favors neither party. The fact that Lee's counsel happened to be the lawyer repeatedly attempting to elicit irrelevant testimony from witnesses does not make the judge's actions unfair to Lee.

Even if we interpret the judge's comments as favoring the prosecution, his actions do not rise to the level of fundamental error. *See Grant*, 764 So. 2d at 805–06. In *Grant*, the trial judge became upset with defense counsel's question of a witness and butted in to ask the witness questions. *Id*. The judge also curtailed the defense's examination of the witness and questioned the relevancy of some of the testimony defense counsel elicited from that witness. *Id*. at 806. The court distinguished the case from *Sparks*, saying that while trial judges should "be cautious in cutting off counsel's questions and interjecting [their] own questions to a witness," the judge's actions did not constitute fundamental error. *Id*. at 805–06. The specially concurring judge in *Grant* aptly summarized the principles involved and reaffirmed the propriety of judicial involvement as needed to "preclude the admission of evidence in order to curb litigation abuses; to reasonably manage and control the conduct of the litigation and its participants; to control the mode and interrogation of witnesses; and, to remedy different forms of litigation abuse." *Id*. at 806–07 (Salcines, J., specially concurring). Consistent with performing these duties, a trial judge need not be "an iceberg only to be heard at calving." *Id*. Where, as in this case, the judge never assumed the role of prosecutor, and performed appropriate management and gate-keeping functions, almost entirely at sidebar, his actions do not constitute fundamental error.

Similarly in *Mathew*, the trial judge repeatedly chastised defense counsel in front of the jury. 837 So. 2d at 1169. He said, in front of the jury, that he believed defense counsel's actions were improper, and refused to discuss the issues at sidebar. *Id*. He said the trial was "starting to sound like Jerry Springer." *Id*. The court held that, although the comments at issue were improper, they did not rise to the level of fundamental error. The *Mathew* court contrasted its facts with those in another case, *Jones v. State,* 385 So. 2d 132 (Fla. 4th DCA 1980). In *Jones,* the trial court, in the

presence of the jury, scolded the defense attorney for arguing with his own witness. *Id.* at 133. The judge then said, "Just a minute. Don't interrupt me. The next time you do that it's going to cost you. You understand? . . . Get your foot off the Bench. Stand up there like you know what you're doing." *Id.* The judge then interrupted defense counsel's question to state that he thought counsel was being misleading. *Id.* It was important to the *Jones* court that the inappropriate attacks on counsel were made in open court. *Id.* at 133–34. In contrast here, the judge's attempts to curtail questioning about irrelevant matters were proper and were done at sidebar where, although the jury could see that a sidebar was occurring, the substance of the discussion was not aired in open court. Both the judicial function being performed, and the manner in which it was carried out, differed in this case. This case falls far short of the facts in *Jones*, and aligns with *Mathew* and other cases involving permissible judicial involvement not amounting to fundamental error. Here, the judge stepped in to exclude inadmissible evidence and to facilitate clarity for a witness who was clearly confused by the way questions were phrased. We find no fundamental error.

## Conclusion

In sum, the judge did not assume the role of prosecutor, and his comments were directed at fulfilling his duty as a neutral arbiter to prevent inadmissible evidence from being presented to the jury. For these reasons, the judge's actions did not vitiate the fairness of Lee's trial. We note, however, that trial judges who become involved in directing lawyers and questioning witnesses run the risk of having their actions unnecessarily become the focus of the appeal. We reject Lee's other arguments without comment and affirm his judgment and sentence.

WETHERELL, J., concurs; MAKAR, J., dissents with opinion.

––––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––––

6

MAKAR, J., dissenting.

During a timeout in the Big Game, a player coming off the field was berated for performing poorly, scolded for being "a bump on a log." Another timeout was called and the player was rebuked for "sitting on your ass yet again." The rant continued: "I don't know what you guys are doing over there. I'm not sure you need to be here, just let [the other team] do whatever [it] wants." A harangue like this from an irate coach is unremarkable; after all, his job is to win the game. What would be startling is if the haranguer was the game's *referee*, the person on the field whose job is to ensure a fair and impartial contest for the players and onlookers alike.

Yet that is what happened in the trial of William Lee. As defense counsel questioned a prosecution witness, the trial judge unilaterally initiated a series of increasingly antagonistic sidebars, punctuated by the quotes above, during which he criticized defense counsel about what he believed the theory of the case was and how her evidence didn't make sense to him ("Somebody clue me in. I'm obviously missing it."). Without a State objection, the trial judge called sidebars, lectured defense counsel, and restricted defense presentations, chiding the prosecutor for his lack of vigor ("shame on the State for sitting on your ass yet again") and failure to protest ("I've let umpteen things go by because nobody is [objecting]"). In effect, the judge performed real-time CLE timeouts for the prosecution's benefit during a live criminal trial. *Chastine v. Broome*, 629 So. 2d 293, 295 (Fla. 4th DCA 1993) ("Obviously, the trial judge serves as the neutral arbiter in the proceedings and must not enter the fray by giving 'tips' to either side.").

The first sidebar began with the judge saying, "[m]aybe the State is not going to object" before he explained and ruled that he was "not going to allow" the defense's line of questioning. The sidebars continued, each prompted by the trial judge's increasing displeasure with the defense's theory and evidence, openly reflecting his discontent with what he perceived as a slow-witted prosecutor who wasn't objecting enough. At one point, the trial judge—again unilaterally and without a State objection—told defense counsel to stop her line of questioning and threatened

7

unspecified sanctions if she did not ("If it happens again, we're going to have a different conversation."). The sidebars played out in front of the jurors, who did not hear the discussions, but could reasonably infer the judge's displeasure. *See Sparks v. State*, 740 So. 2d 33, 37 (Fla. 1st DCA, 1999) (jury witnessed sidebar and could reasonably infer that subsequent questioning was based on new information obtained from judge).

A lack of neutrality arose in other respects. For instance, the trial judge interrupted defense counsel's cross-examination of an important witness, actively questioning him (eighteen questions and almost three pages of the trial transcript), and elicited testimony that was favorable to the prosecution (despite the prosecution's failure to do so on direct examination), before congratulating himself in front of the jury (Judge: "Did that help?" Jurors: "Yes. Thank You." Judge: "Sometimes I miss being a lawyer, you know. But, anyway, glad I could help, because it helped me too."). *See Seago v. State*, 23 So. 3d 1269 (Fla. 2d DCA 2010) (Trial judge's sua sponte inquiry as to whether State's forgetful witness had been deposed violated judicial duty of neutrality resulting in prejudicial error.); *see generally Williams v. State*, 143 So. 2d 484, 488 (Fla. 1962) (Trial judge "may ask questions to clarify the issues but he should not lean to the prosection [sic] or defense lest it appear that his neutrality is departing from center.").

The trial judge also referred to the "expert fella" for the prosecution who had procured a surveillance videotape (which was the focus of the cross-examination), thereby placing the court's imprimatur on a non-expert and a key piece of the State's evidence that the defense sought to rebut as to its accuracy and reliability. *Johnson v. State*, 114 So. 3d 1012, 1016-17 (Fla. 5th DCA 2012) ("While a judge may take the initiative to clear up uncertainties in the issues of a case, the law is clear, especially in a criminal prosecution, that the trial court should take great care not to intimate to the jury the court's opinion as to the weight, character, or credibility of any evidence adduced."); § 90.106, Fla. Stat. ("A judge may not sum up the evidence or comment to the jury upon the weight of evidence [or] the credibility of witnesses . . . .").

Lee's defense counsel did not object to the trial court's behavior during the proceedings, but impartiality of a trial judge constitutes fundamental error that can be raised for the first time on appeal, which Lee has done. *Sparks*, 740 So. 2d at 35. Fundamental error arises in the rare cases where "the interests of justice present a compelling demand for its application," such as where a "trial judge's errors, taken cumulatively," render a trial "fundamentally unfair as to amount to a denial of due process." *Grigg v. State*, 230 So. 3d 943, 947 (Fla. 1st DCA 2017) (remanding for new trial due to trial judge's improper and prejudicial colloquy with jurors during voir dire).

On this record, Lee has shown fundamental error under our precedent, particularly *Sparks*. In that case, this Court held that a single sidebar at which the trial judge referred to an affidavit that the prosecution then used to impeach a witness constituted fundamental error necessitating a new trial. 740 So. 2d at 37. This was so even though the jury could see—but wasn't privy to—the sidebar discussion; and the trial judge merely pointed out the affidavit, making "[n]o other representations, suggestions, inquiry, or statements" on the matter. *Id.* at 34. It was enough that the "jury could have reasonably inferred that the prosecutor's new information used during the resumed questioning of the defendant had been obtained from the judge." *Id.* at 37. *Sparks* and related cases establish that judicial neutrality is required whether the trial judge is in the jury's presence or outside the jury's earshot at sidebar: a "duty of neutrality is especially important when the trial judge is in the presence of a jury," but it is equally true that "a trial court can commit error—even fundamental error—outside the presence of the jury by taking actions that obviously favor one side or the other." *J.L.D. v. State*, 4 So. 3d 24, 26 (Fla. 2d DCA 2009); *see Sparks*, 740 So. 2d at 37 (jury witnessed prosecutor's resumption of questioning after sidebar where judge pointed out existence of affidavit).

*Sparks* involved a single judicial act at sidebar outside the jury's presence. In contrast, both strains of judicial prejudice—i.e., conduct in and outside the jury's presence—are present here, the confluence of which crossed the line into fundamental error that negates the "requirement of judicial impartiality," which "is at the core of our system of criminal justice." *McFadden v. State*, 732 So.

2d 1180, 1184 (Fla. 4th DCA 1999); *see Smith v. State*, 205 So. 3d 820, 823 (Fla. 2d DCA 2016) (Trial court's departure from its role of neutral arbiter amounted to fundamental error.); *Johnson*, 114 So. 3d at 1017-18 (Trial court's "conduct vitiated the validity of the proceedings," amounting to fundamental error "that undermines the confidence in the trial outcome and goes to the very foundation of a case" or denies due process.); *Sparks*, 740 So. 2d at 37 (Trial judge "assumed the role of prosecutor . . . [which] constitutes error" that was not harmless.).[1]

Rather than an impartial referee as to both teams, the trial judge assisted the prosecution, undercut the defense, and became an active questioner during the trial solely to Lee's detriment; the saga played out in sidebars and before the jury itself. Unlike *Sparks* and cases where a trial judge makes a single interruption of cross-examination without a party's objection, *see Grant v. State*, 764 So. 2d 804 (Fla. 2d DCA 2000),[2] this case involves multiple

---

[1] Our Court should neither rely on nor adopt *Mathew v. State*, 837 So. 2d 1167, 1169 (Fla. 4th DCA 2003), which found no fundamental error on the facts of that case despite the trial judge: (a) "repeatedly, and without objection, comment[ing] that he believed defense counsel's actions were improper," (b) "without objection, interrupt[ing] defense counsel's closing argument to inform defense counsel that the court believed defense's argument was 'inappropriate,'" (c) "attempt[ing] to tell the prosecutor, in detail, what questions to ask" to satisfy a hearsay exception, (d) "refus[ing] to allow defense counsel to have a side bar as to objections," and (e) "ma[king] a reference in front of the jury that the trial was 'starting to sound like Jerry Springer.'" Surely this degree of departure from neutrality ought not to be the standard in our District.

[2] The majority in *Grant* explicitly *rejected* the special concurrence of Judge Salcines in that case, concluding that the trial court's conduct in interrupting cross-examination was "clearly improper." 764 So. 2d at 806 ("While the concurring opinion concludes that the trial judge prevented the introduction of irrelevant evidence and curtailed the introduction of repetitious and confusing evidence, our review of the record does not permit us to join in that assessment of the trial judge's activity.").

interruptions plus active questioning and commentary by the trial judge. The judicial duty is not to be an active participant in this manner or to this degree; even the State concedes that the "trial judge's involvement in the case was not best practice."

The trial judge may have had benign motives, but the appearance of neutrality is important, such that even unintentional conduct can compromise a trial. *See Lyles v. State*, 742 So. 2d 842, 843 (Fla. 2d DCA 1999) ("Whether intentional or not, the trial judge gave the appearance of partiality by taking sua sponte actions which benefitted the State."). And it is principally the trial lawyers' duty—not the judge's—to keep a jury from hearing inadmissible evidence. *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998) ("In the absence of a proper objection, a trial judge does not have an obligation to prohibit inadmissible evidence from being considered by the fact finder."); CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 104.1 (2018) ("Under our adversary system, the burden is on counsel to make a specific objection prior to a witness answering a question.").

It has been long-recognized that the "single most dominant factor in the administration of a trial is the conduct of the judge; the manner in which he exercises control over such proceedings is reflected through his remarks and comments." *Hunter v. State*, 314 So. 2d 174, 174 (Fla. 4th DCA 1975). Trial judges face persistent challenges in courtroom management, "the difficulty of which is too often taken for granted." *Id.* In administering justice, a "trial judge must be equal to the task; and should endeavor to avoid the type of comment or remark that might result in inhibiting counsel from giving full representation to his client or that might result in bringing counsel into disfavor before the jury at the expense of the client." *Id.* at 175. Here, the sidebars, judicial examination, and commentary might not individually tip the scales, but their collective and cumulative effects "require relief because [Lee's] trial was rendered 'fundamentally unfair as to amount to a denial of due process.'" *Grigg*, 230 So. 3d at 947 (citations omitted); *see also Love v. State*, 569 So. 2d 807, 810 (Fla. 1st DCA 1990) ("A judge must not only be impartial, he must leave the impression of impartiality upon all those who attend court.").

_____

Susanne K. Sichta, Rick A. Sichta, and Joseph Hamrick of The Sichta Firm, LLC, Jacksonville, for Appellant.

Pamela Jo Bondi, Attorney General, and Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.