Kelsey, J.
We affirm William Lee's convictions and sentences for two counts of attempted first-degree murder, one count of shooting or throwing deadly missiles, and tampering with evidence. We write only to address the unpreserved argument that the trial judge departed from the role of a neutral arbiter and thereby vitiated the fairness of the trial.
Judges' Involvement At Trial
It has long been the law that "Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge." State ex rel. Mickle v. Rowe , 100 Fla. 1382, 131 So. 331, 332 (1930) (holding judge should have granted motion to disqualify him in a case involving a bank in which he had deposited 5 or 6 dollars before the bank closed). In the specific context of conducting court proceedings, judges have the statutory obligation to control the admission of evidence. § 90.104(2), Fla. Stat. (2015) (requiring judges to "conduct proceedings, to the maximum extent practicable, in such a manner as to prevent inadmissible evidence from being suggested to the jury by any means."). A judge may question witnesses to clarify issues, as long as the questions do not demonstrate a departure from the judge's neutral position. Williams v. State , 143 So.2d 484, 488 (Fla. 1962) ; see § 90.106, Fla. Stat. (2015) ("A judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused.").
Judges are warned to "be cautious in cutting off counsel's questions and interjecting [their] own questions to a witness." Grant v. State , 764 So.2d 804, 806 (Fla. 2d DCA 2000). A judge should not only be impartial, but should "leave the impression of impartiality on all those who attend court." Sparks v. State , 740 So.2d 33, 35-36 (Fla. 1st DCA 1999). A judge who assumes the role of prosecutor deprives the defendant of a fair and impartial tribunal, which, as a deprivation of due process, constitutes fundamental error. Cagle v. State , 821 So.2d 443, 444 (Fla. 2d DCA 2002).
However, "it is clear that not every act or comment that might be interpreted *227 as demonstrating less than neutrality on the part of the judge will be deemed fundamental error." Mathew v. State , 837 So.2d 1167, 1170 (Fla. 4th DCA 2003) ; see also Jones v. State , 385 So.2d 132, 134 (Fla. 4th DCA 1980) ("Initially, we point out there are occasions where there is no error in rebuking defense counsel in the presence of the jury.").
Facts Of This Case
The State theorized that this shooting involved a love triangle gone awry. Lee shot into an SUV driven by another man, and in which rode Lee's own sometime girlfriend. During the trial, the judge made several comments about defense counsel's questions and the prosecutor's failure to object to them. The judge also asked several questions of one of the State's witnesses, a detective, when the witness remained confused about defense counsel's questions despite several attempts at reframing them.
First, defense counsel asked the girlfriend if the driver was upset that she preferred to be with Lee because Lee could better provide for her. The judge called a sidebar and told defense counsel that even though the State was not objecting, he was not going to allow counsel to continue asking the witness what was in the driver's mind.
Next, defense counsel asked the driver if he told the girlfriend the two of them were done because she had at one point chosen Lee, and the court called another sidebar. The judge told the prosecutor he was sitting like a "bump on a log" while defense counsel was asking irrelevant questions about a relationship between the two victims. The judge told defense counsel that she had elicited "a gracious plenty" about the victims' relationship, so she could ask a couple more questions, then move on.
Defense counsel also asked the driver several questions about his driving the SUV away from the shooting that night and totaling it two days later. The State objected when defense counsel then asked the driver to confirm that he did not make an insurance claim after he totaled the vehicle. This time the judge called a sidebar and more sternly chastised defense counsel for asking "completely immaterial" questions. He also shamed the State for "sitting on your ass yet again" and letting defense counsel do whatever she wanted. At the conclusion of the sidebar, defense counsel moved on to asking the driver about the shooting itself.
Later, defense counsel was questioning the detective about a surveillance video he copied from the apartment complex's surveillance system. Specifically, counsel questioned the detective about when he realized the copy was not timestamped, but he was confused by the questions, so the State objected to the form of the question. After defense counsel made a few attempts to clarify the questions without success, the judge "chime[d] in" to ask some questions of his own. He had the witness clarify the timeline of when he discovered and then copied the footage. Finally, he asked the detective when he realized the copy did not have a running time stamp on it.
Analysis
Lee argues that the judge's actions constituted fundamental error because they gave the impression that the judge was not acting as an impartial arbiter. See Sparks , 740 So.2d at 35-36. We disagree. Our review of the record leads us to conclude that the trial judge did not violate the governing legal principles. Rather, he assisted both sides in clarifying issues and excluding inadmissible evidence. Further, and significantly, Lee has failed to demonstrate fundamental error.
*228 These facts are unlike those in other cases holding that trial courts acted improperly. In Cagle , the court reversed a revocation order where the trial court essentially took over the prosecutor's job of calling and questioning witnesses. 821 So.2d at 444 ; see also Lang v. State , 228 So.3d 153, 155 (Fla. 4th DCA 2017) (reversing a revocation order where the judge gathered his own evidence and used it to make crucial credibility determinations). In Evans v. State , 831 So.2d 808, 811 (Fla. 4th DCA 2002), the court reversed a defendant's conviction where the trial judge suggested to the State that it should inquire into the immigration status of a witness after that witness declared she was a law-abiding citizen. Similarly, in Lee v. State , 789 So.2d 1105, 1107 (Fla. 4th DCA 2001), the court reversed a conviction where the judge prompted the State to have the witness identify a scar on the defendant's arm for the jury. Lastly, in Sparks , this Court reversed a conviction where the judge pointed the prosecutor to evidence he could use to question the credibility of the defendant after the prosecutor had concluded his questioning of the defendant. 740 So.2d at 37. We held that the trial judge fundamentally erred when he assumed the role of prosecutor. Id. at 36-37.
Here, the judge demonstrated growing frustration with defense counsel's questioning of witnesses, and was equally frustrated with the prosecutor's failure to object to inadmissible evidence. However, unlike Cagle , Evans , Lee , Lang , and Sparks , the judge here did not take over prosecuting the State's case, nor did he prompt the prosecutor to enter evidence or cross-examine a witness with certain questions. He instead chastised both attorneys for allowing the jury to hear inadmissible evidence. The judge had a duty to keep the jury from hearing this inadmissible evidence, and his actions were directed at carrying out that duty. Carrying out that judicial duty inherently favors neither party. The fact that Lee's counsel happened to be the lawyer repeatedly attempting to elicit irrelevant testimony from witnesses does not make the judge's actions unfair to Lee.
Even if we interpret the judge's comments as favoring the prosecution, his actions do not rise to the level of fundamental error. See Grant , 764 So.2d at 805-06. In Grant , the trial judge became upset with defense counsel's question of a witness and butted in to ask the witness questions. Id. The judge also curtailed the defense's examination of the witness and questioned the relevancy of some of the testimony defense counsel elicited from that witness. Id. at 806. The court distinguished the case from Sparks , saying that while trial judges should "be cautious in cutting off counsel's questions and interjecting [their] own questions to a witness," the judge's actions did not constitute fundamental error. Id. at 805-06. The specially concurring judge in Grant aptly summarized the principles involved and reaffirmed the propriety of judicial involvement as needed to "preclude the admission of evidence in order to curb litigation abuses; to reasonably manage and control the conduct of the litigation and its participants; to control the mode and interrogation of witnesses; and, to remedy different forms of litigation abuse." Id. at 806-07 (Salcines, J., specially concurring). Consistent with performing these duties, a trial judge need not be "an iceberg only to be heard at calving." Id. Where, as in this case, the judge never assumed the role of prosecutor, and performed appropriate management and gate-keeping functions, almost entirely at sidebar, his actions do not constitute fundamental error.
Similarly in Mathew , the trial judge repeatedly chastised defense counsel in front *229 of the jury. 837 So.2d at 1169. He said, in front of the jury, that he believed defense counsel's actions were improper, and refused to discuss the issues at sidebar. Id. He said the trial was "starting to sound like Jerry Springer." Id. The court held that, although the comments at issue were improper, they did not rise to the level of fundamental error. The Mathew court contrasted its facts with those in another case, Jones v. State, 385 So.2d 132 (Fla. 4th DCA 1980). In Jones, the trial court, in the presence of the jury, scolded the defense attorney for arguing with his own witness. Id. at 133. The judge then said, "Just a minute. Don't interrupt me. The next time you do that it's going to cost you. You understand? ... Get your foot off the Bench. Stand up there like you know what you're doing." Id. The judge then interrupted defense counsel's question to state that he thought counsel was being misleading. Id. It was important to the Jones court that the inappropriate attacks on counsel were made in open court. Id. at 133-34. In contrast here, the judge's attempts to curtail questioning about irrelevant matters were proper and were done at sidebar where, although the jury could see that a sidebar was occurring, the substance of the discussion was not aired in open court. Both the judicial function being performed, and the manner in which it was carried out, differed in this case. This case falls far short of the facts in Jones , and aligns with Mathew and other cases involving permissible judicial involvement not amounting to fundamental error. Here, the judge stepped in to exclude inadmissible evidence and to facilitate clarity for a witness who was clearly confused by the way questions were phrased. We find no fundamental error.
Conclusion
In sum, the judge did not assume the role of prosecutor, and his comments were directed at fulfilling his duty as a neutral arbiter to prevent inadmissible evidence from being presented to the jury. For these reasons, the judge's actions did not vitiate the fairness of Lee's trial. We note, however, that trial judges who become involved in directing lawyers and questioning witnesses run the risk of having their actions unnecessarily become the focus of the appeal. We reject Lee's other arguments without comment and affirm his judgment and sentence.
Wetherell, J., concurs; Makar, J., dissents with opinion.