Makar, J., dissenting.
During a timeout in the Big Game, a player coming off the field was berated for performing poorly, scolded for being "a bump on a log." Another timeout was called and the player was rebuked for "sitting on your ass yet again." The rant continued: "I don't know what you guys are doing over there. I'm not sure you need to be here, just let [the other team] do whatever [it] wants." A harangue like this from an irate coach is unremarkable; after all, his job is to win the game. What would be startling is if the haranguer was the game's referee , the person on the field whose job is to ensure a fair and impartial contest for the players and onlookers alike.
Yet that is what happened in the trial of William Lee. As defense counsel questioned a prosecution witness, the trial judge unilaterally initiated a series of increasingly antagonistic sidebars, punctuated by the quotes above, during which he criticized defense counsel about what he believed the theory of the case was and how her evidence didn't make sense to him ("Somebody clue me in. I'm obviously missing it."). Without a State objection, the trial judge called sidebars, lectured defense counsel, and restricted defense presentations, chiding the prosecutor for his *230 lack of vigor ("shame on the State for sitting on your ass yet again") and failure to protest ("I've let umpteen things go by because nobody is [objecting]"). In effect, the judge performed real-time CLE timeouts for the prosecution's benefit during a live criminal trial. Chastine v. Broome , 629 So.2d 293, 295 (Fla. 4th DCA 1993) ("Obviously, the trial judge serves as the neutral arbiter in the proceedings and must not enter the fray by giving 'tips' to either side.").
The first sidebar began with the judge saying, "[m]aybe the State is not going to object" before he explained and ruled that he was "not going to allow" the defense's line of questioning. The sidebars continued, each prompted by the trial judge's increasing displeasure with the defense's theory and evidence, openly reflecting his discontent with what he perceived as a slow-witted prosecutor who wasn't objecting enough. At one point, the trial judge-again unilaterally and without a State objection-told defense counsel to stop her line of questioning and threatened unspecified sanctions if she did not ("If it happens again, we're going to have a different conversation."). The sidebars played out in front of the jurors, who did not hear the discussions, but could reasonably infer the judge's displeasure. See Sparks v. State , 740 So.2d 33, 37 (Fla. 1st DCA, 1999) (jury witnessed sidebar and could reasonably infer that subsequent questioning was based on new information obtained from judge).
A lack of neutrality arose in other respects. For instance, the trial judge interrupted defense counsel's cross-examination of an important witness, actively questioning him (eighteen questions and almost three pages of the trial transcript), and elicited testimony that was favorable to the prosecution (despite the prosecution's failure to do so on direct examination), before congratulating himself in front of the jury (Judge: "Did that help?" Jurors: "Yes. Thank You." Judge: "Sometimes I miss being a lawyer, you know. But, anyway, glad I could help, because it helped me too."). See Seago v. State , 23 So.3d 1269 (Fla. 2d DCA 2010) (Trial judge's sua sponte inquiry as to whether State's forgetful witness had been deposed violated judicial duty of neutrality resulting in prejudicial error.); see generally Williams v. State , 143 So.2d 484, 488 (Fla. 1962) (Trial judge "may ask questions to clarify the issues but he should not lean to the prosection [sic] or defense lest it appear that his neutrality is departing from center.").
The trial judge also referred to the "expert fella" for the prosecution who had procured a surveillance videotape (which was the focus of the cross-examination), thereby placing the court's imprimatur on a non-expert and a key piece of the State's evidence that the defense sought to rebut as to its accuracy and reliability. Johnson v. State , 114 So.3d 1012, 1016-17 (Fla. 5th DCA 2012) ("While a judge may take the initiative to clear up uncertainties in the issues of a case, the law is clear, especially in a criminal prosecution, that the trial court should take great care not to intimate to the jury the court's opinion as to the weight, character, or credibility of any evidence adduced."); § 90.106, Fla. Stat. ("A judge may not sum up the evidence or comment to the jury upon the weight of evidence [or] the credibility of witnesses ....").
Lee's defense counsel did not object to the trial court's behavior during the proceedings, but impartiality of a trial judge constitutes fundamental error that can be raised for the first time on appeal, which Lee has done. Sparks , 740 So.2d at 35. Fundamental error arises in the rare cases where "the interests of justice present a compelling demand for its application," such as where a "trial judge's errors, taken *231 cumulatively," render a trial "fundamentally unfair as to amount to a denial of due process." Grigg v. State , 230 So.3d 943, 947 (Fla. 1st DCA 2017) (remanding for new trial due to trial judge's improper and prejudicial colloquy with jurors during voir dire).
On this record, Lee has shown fundamental error under our precedent, particularly Sparks . In that case, this Court held that a single sidebar at which the trial judge referred to an affidavit that the prosecution then used to impeach a witness constituted fundamental error necessitating a new trial. 740 So.2d at 37. This was so even though the jury could see-but wasn't privy to-the sidebar discussion; and the trial judge merely pointed out the affidavit, making "[n]o other representations, suggestions, inquiry, or statements" on the matter. Id. at 34. It was enough that the "jury could have reasonably inferred that the prosecutor's new information used during the resumed questioning of the defendant had been obtained from the judge." Id. at 37. Sparks and related cases establish that judicial neutrality is required whether the trial judge is in the jury's presence or outside the jury's earshot at sidebar: a "duty of neutrality is especially important when the trial judge is in the presence of a jury," but it is equally true that "a trial court can commit error-even fundamental error-outside the presence of the jury by taking actions that obviously favor one side or the other." J.L.D. v. State , 4 So.3d 24, 26 (Fla. 2d DCA 2009) ; see Sparks , 740 So.2d at 37 (jury witnessed prosecutor's resumption of questioning after sidebar where judge pointed out existence of affidavit).
Sparks involved a single judicial act at sidebar outside the jury's presence. In contrast, both strains of judicial prejudice-i.e., conduct in and outside the jury's presence-are present here, the confluence of which crossed the line into fundamental error that negates the "requirement of judicial impartiality," which "is at the core of our system of criminal justice." McFadden v. State , 732 So.2d 1180, 1184 (Fla. 4th DCA 1999) ; see Smith v. State , 205 So.3d 820, 823 (Fla. 2d DCA 2016) (Trial court's departure from its role of neutral arbiter amounted to fundamental error.); Johnson , 114 So.3d at 1017-18 (Trial court's "conduct vitiated the validity of the proceedings," amounting to fundamental error "that undermines the confidence in the trial outcome and goes to the very foundation of a case" or denies due process.); Sparks , 740 So.2d at 37 (Trial judge "assumed the role of prosecutor ... [which] constitutes error" that was not harmless.).[1]
Rather than an impartial referee as to both teams, the trial judge assisted the prosecution, undercut the defense, and became an active questioner during the trial solely to Lee's detriment; the saga played out in sidebars and before the jury itself. Unlike Sparks and cases where a trial judge makes a single interruption of cross-examination without a party's objection, see *232 Grant v. State , 764 So.2d 804 (Fla. 2d DCA 2000),[2] this case involves multiple interruptions plus active questioning and commentary by the trial judge. The judicial duty is not to be an active participant in this manner or to this degree; even the State concedes that the "trial judge's involvement in the case was not best practice."
The trial judge may have had benign motives, but the appearance of neutrality is important, such that even unintentional conduct can compromise a trial. See Lyles v. State , 742 So.2d 842, 843 (Fla. 2d DCA 1999) ("Whether intentional or not, the trial judge gave the appearance of partiality by taking sua sponte actions which benefitted the State."). And it is principally the trial lawyers' duty-not the judge's-to keep a jury from hearing inadmissible evidence. J.B. v. State , 705 So.2d 1376, 1378 (Fla. 1998) ("In the absence of a proper objection, a trial judge does not have an obligation to prohibit inadmissible evidence from being considered by the fact finder."); CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 104.1 (2018) ("Under our adversary system, the burden is on counsel to make a specific objection prior to a witness answering a question.").
It has been long-recognized that the "single most dominant factor in the administration of a trial is the conduct of the judge; the manner in which he exercises control over such proceedings is reflected through his remarks and comments." Hunter v. State , 314 So.2d 174, 174 (Fla. 4th DCA 1975). Trial judges face persistent challenges in courtroom management, "the difficulty of which is too often taken for granted." Id. In administering justice, a "trial judge must be equal to the task; and should endeavor to avoid the type of comment or remark that might result in inhibiting counsel from giving full representation to his client or that might result in bringing counsel into disfavor before the jury at the expense of the client." Id. at 175. Here, the sidebars, judicial examination, and commentary might not individually tip the scales, but their collective and cumulative effects "require relief because [Lee's] trial was rendered 'fundamentally unfair as to amount to a denial of due process.' " Grigg , 230 So.3d at 947 (citations omitted); see also Love v. State , 569 So.2d 807, 810 (Fla. 1st DCA 1990) ("A judge must not only be impartial, he must leave the impression of impartiality upon all those who attend court.").

Our Court should neither rely on nor adopt Mathew v. State , 837 So.2d 1167, 1169 (Fla. 4th DCA 2003), which found no fundamental error on the facts of that case despite the trial judge: (a) "repeatedly, and without objection, comment[ing] that he believed defense counsel's actions were improper," (b) "without objection, interrupt[ing] defense counsel's closing argument to inform defense counsel that the court believed defense's argument was 'inappropriate,' " (c) "attempt[ing] to tell the prosecutor, in detail, what questions to ask" to satisfy a hearsay exception, (d) "refus[ing] to allow defense counsel to have a side bar as to objections," and (e) "ma[king] a reference in front of the jury that the trial was 'starting to sound like Jerry Springer.' " Surely this degree of departure from neutrality ought not to be the standard in our District.

The majority in Grant explicitly rejected the special concurrence of Judge Salcines in that case, concluding that the trial court's conduct in interrupting cross-examination was "clearly improper." 764 So.2d at 806 ("While the concurring opinion concludes that the trial judge prevented the introduction of irrelevant evidence and curtailed the introduction of repetitious and confusing evidence, our review of the record does not permit us to join in that assessment of the trial judge's activity.").